UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARZEL L. FOSTER, III,

      Plaintiff,

                              CASE NO. 07-CV-11250
                              JUDGE PAUL D. BORMAN
                              MAGISTRATE JUDGE PAUL J. KOMIVES
v.

ARGENT MORTGAGE COMPANY, L.L.S.;
AMC MORTGAGE COMPANY;
AMERIQUEST MORTGAGE;
COUNTRY WIDE HOME LOANS, INC.;
BANK OF AMERICA, N.A.;
FIRST CHOICE FINANCIAL;
WELLS FARGO BANK, N.A.;
TROTT & TROTT, P.C. and
MERS;

      Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS ARGENT MORTGAGE COMPANY, LLC, AMC MORTGAGE
SERVICES, INC., AND AMERIQUEST MORTGAGE COMPANY'S MAY 7, 2009
MOTION FOR SUMMARY JUDGMENT (Doc. Ent. 60)**

**Table of Contents**

**I. Recommendation** ...................................................................................................................2
**II. Report** ..................................................................................................................................2
      **A. Statement of Facts**..........................................................................................................2
      **B. Amended Complaint** .....................................................................................................3
      **C. Defendants' May 7, 2009 Motion for Summary Judgment**............................................3
      **D. Standard: Fed. R. Civ. P. 56(c)** ......................................................................................3
      **E. This Court Should Grant Defendants' Motion for Summary Judgment** .....................6
            **1. Fraud Claim** ...........................................................................................................6
            **2. Claim for Violation of Equal Credit Opportunity Act** .....................................10
            **3. Claim for Unjust Enrichment**............................................................................11
            **4. Claim for Intentional Infliction of Emotion Distress**........................................13
            **5. Claim for Violation of the Truth-In-Lending Act** ...........................................14
            **6. Claim for Violation of Michigan Consumer Protection Act** ...........................15
**III. Notice to Parties Regarding Objections** ............................................................................15

**I.      RECOMMENDATION:** This Court should grant defendants' summary judgment motion as to all Counts I, II, IV, V, VI, and VIII. A separate report and recommendation is filed this date regarding defendants Countrywide and Wells Fargo's July 2, 2009 motion to dismiss the first amended complaint.

**II.     REPORT:**

**A.  Statement of Facts**

In April 2005, plaintiff retained a mortgage brokerage firm, First Choice Financial, to assist him in securing a residential mortgage loan for a property located on 19165 Midway, Southfield, Michigan 48076. Doc. Ent. 60-3. On April 8, 2005, the broker provided plaintiff with a variety of required disclosures, including a Good Faith Estimate, Truth-In-Lending Disclosure Statement and Servicing Disclosure Statement. Doc. Ent. 60-4. Further, in an effort to secure the residential mortgage loan, plaintiff authorized the broker to release information contained in his loan application or other documents required in connection with the loan. Doc. Ent. 60-5.

On or about April 11, 2005, plaintiff's broker submitted a loan request on his behalf to Argent. Doc. Ent. 60-7. Subsequently, Argent mailed plaintiff several documents showing the estimated cost of credit for the property and enclosed several significant documents and disclosures. Doc. Ent. 60-8. Included were a Real Estate Settlement Procedures Act (RESPA) Servicing Disclosure indicating that servicing would be assigned to AMC Mortgage Services, Inc., a letter labeled 'Understanding Your Loan' which explains the loan process, a disclosure explaining variable rate loans, a Consumer Caution and Home Ownership Counseling Notice which advises the borrower about the risks of borrowing, and a Borrower Bill of Rights as required by Michigan law. Doc. Ent. 60-8.

2

On April 28, 2005, plaintiff entered in a mortgage with Argent. Doc. Ent. 60-9. The mortgage set forth the loan amount and plaintiff executed an 'Adjustable Rate Rider.' Doc. Ent. 60-9. During this transaction, plaintiff also signed a 'Truth-in-Lending Disclosure Statement.' Doc. Ent. 60-11. This Statement provided plaintiff with notice that the loan has a variable rate feature and a variable rate feature. Doc. Ent. 60-11. On April 28, 2005, plaintiff also signed the RESPA Servicing Disclosure identifying AMC as the servicer of the loan (Doc. Ent. 60-14) and a Joint Notification Letter Notice of Assignment, Sale or Transfer of Servicing Rights, which again advised of the serving transfer from Argent to AMC (Doc. Ent. 60-20).

On April 30, 2005, the mortgage was duly assigned to Wells Fargo Bank, resulting in Countrywide Home Loans assuming responsibilities as servicer. Doc. Ent. 69-6. On August 22, 2006, Wells Fargo foreclosed the mortgage on the property and purchased the property at the foreclosure sale. Doc. Ent. 69-7. The redemption period came and went and as plaintiff failed to redeem property, title vested in Wells Fargo. On or before March 26, 2007, Wells Fargo filed suit against plaintiff to obtain possession of the property. Doc. Ent. 69-8. The district court entered a favorable judgment for Wells Fargo which entitled it to possession of the property. Doc. 69-9.

### B. Amended Complaint

On January 15, 2009, plaintiff filed an amended complaint in this Court alleging an illegal foreclosure on property located at 19165 Midway Road, Southfield, Michigan 48075. Doc. Ent. 49.

The caption of the complaint lists the defendants as Argent Mortgage Company, LLC; AMC Mortgage Company; Ameriquest Mortgage; Countrywide Home Loans, Inc.; Bank of America; First Choice Financial; Wells Fargo Bank; Trott & Trott and MERS. Doc. Ent. 49 at 1.

3

However, on June 24, 2009, Judge Borman dismissed the complaints against defendants First Choice Financial Group Inc., Trott & Trott, MERS, and Bank of America for failure to effect proper service. Doc. Ent. 66. On May 7, 2009, defendants Argent Mortgage, AMC Mortgage, and Ameriquest filed a motion for summary judgment. Doc. Ent. 60-1. The motion for summary judgment was referred to me for entry of a report and recommendation and is the subject of this Report and Recommendation. Doc. Ent. 61. On May 8, 2009, the remaining defendants Countrywide and Wells Fargo filed a motion to dismiss. Doc. Ent. 69. Plaintiff's amended complaint contains eight (8) counts of which only six (6) identify defendants Argent, AMC, and Ameriquest.[1] Doc. Ent. 49.

**C. Defendants' June 2, 2009 Motion for Summary Judgment.**

On May 7, 2009, defendants Argent, Ameriquest, and AMC filed a Fed. R. Civ. P. 56 motion for summary judgment. Doc. Ent. 60-1. Defendants seek dismissal of plaintiff's claims and argue that "(i) the claim for Fraud in Count I does not allege a misrepresentation by any of these defendants; (ii) plaintiff's timely receipt of a Good Faith Estimate and other required disclosures eviscerates Count II, which alleges a violation of the Truth in Lending Act and Regulation Z, and which claims are otherwise barred by the applicable statute of limitations; (iii) there is no factual basis to allege in Count IV that Plaintiff was discriminated against in violation of the Equal Credit Opportunity Act; (iv) the Michigan Consumer Protection Act, the basis for Counts V, does not apply to residential mortgage transactions; (v) the presence of an express contract bars the claim for Unjust Enrichment in Count VI; and (vi) there is no factual basis to allege in Count

---

[1] Counts I, II, IV, V, VI, and VIII identify Argent, AMC, and Ameriquest as defendants. Count I alleges fraud against Countrywide, Bank of America, Wells Fargo, Trott & Trott, First Choice Financial Group, Argent, Ameriquest, and AMC. Doc. Ent. 49 at 1. Count II alleges a violation of the Truth-in-Lending Act. Doc. Ent. 49 at 2. Count IV alleges a violation of the Equal Credit Opportunity Act by all defendants including Argent, AMC, and Ameriquest. Doc. Ent. 49 at 3-4. Count V alleges the defendants violated the Michigan Consumer Protection act. Doc. Ent. 49 at 4. Count VII alleges the conduct of all defendants caused plaintiff emotional distress. Doc. Ent. 49 at 5.

VIII that any conduct by these Defendants would give rise to a Intentional Infliction of Emotional Distress claim." Doc. Ent. 60-1 at 5.

On May 8, 2009, Judge Borman referred this motion to me for entry of a report and recommendation. Doc. Ent. 61. On May 11, 2009, I entered an order setting a response deadline for plaintiff of June 30, 2009. Doc. Ent. 62. In this order, I also affirmed that the motion for summary judgment would be "decided upon the papers without being scheduled for oral argument." Doc. Ent. 62. Subsequently, on June 22, 2009, plaintiff filed an ex parte emergency motion for extension of time to file a response to defendants' motion for summary judgment. Doc. Ent. 65. Notwithstanding this motion, plaintiff filed his response on June 30, 2009. Doc. Ent. 67. However, I granted plaintiff's request for an extension of time to allow him additional time to supplement his answer and respond to the motion for summary judgment. Doc. Ent. 71. On September 31, 2009, plaintiff filed supplemental answers to motion for summary judgment. Doc. Ent. 75. Defendants Argent, Ameriquest, and AMC filed a reply brief in support of motion for summary judgment on September 14, 2009. Doc. Ent. 81.

**D.  Standard: Fed. R. Civ. P. 56**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). There are no genuine issues of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Rule 56, the evidence of the nonmovant is to be believed, and all justifiable

5

inferences are to be drawn in the nonmovant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255); *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986). However, a mere scintilla of evidence in support of the nonmovant's position does not create a genuine issue of material fact. *Anderson*, 477 U.S. 242, 252 (1986). In fact, once the movant has carried his burden under Rule 56(c), the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts" in order to avoid summary judgment. *Matsushita*, 475 U.S. at 586.

**E. This Court Should Grant the Defendants' Summary Judgment Motion.**

**1. Fraud Claim**

Plaintiff asserts a claim for Fraud in Count I of the amended complaint. To show an actionable fraud claim, plaintiff must show: "(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Martell v. Turcheck*, No. 07-CV-14068, 2008 WL 2714210, at * 4, (E.D. Mich. July, 7, 2008) citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976). The absence of any of these elements is "fatal to a recovery.*"* *Hi-Way Motor Co.*, 247 N.W.2d at 816.

As an initial matter, defendants contend this Court should dismiss Count I because plaintiff has not alleged that a false representation was made by the moving defendants. Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic*

6

*Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (citations and quotations omitted). While plaintiff's amended complaint states that "Countrywide/Bank of America and Wells Fargo made false material misrepresentations," there is no specific mention of the moving defendants or any alleged misrepresentation by them. Plaintiff's failure to allege misrepresentation by defendants should entitle them to a Rule 12(b)(6) dismissal for failure to state a claim.

Further, even if plaintiff subsequently alleges a misrepresentation by the moving defendants, the defendants should be entitled to summary judgment because plaintiff's failure to show reliance on any misrepresentations is fatal to this claim. The record shows that plaintiff signed a mortgage, which contained a valid merger clause, and this merger clause makes it unreasonable for plaintiff to rely on any representations not included in the mortgage. In *UAW-GM Human Resources Center v. KSL Recreation Corp.*, 228 Mich. App. 486 (1998), the court held that "when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that would invalidates the entire contract including the merger clause." The court further asserted that "the merger clause made it unreasonable for the plaintiff's agent to rely on any representations not included in the letter agreement." *Id.* at 504.

In this case, plaintiff signed the 'Important Notice to Borrowers', which contained a valid merger clause. Doc. Ent. 60-21. The Notice provided that "[t]o protect [the parties] from misunderstanding or disappointments" the entire agreement "was contained in the loan documents . . . signed today." Doc. Ent. 60-21. Further the Notice provided that "[a]ny subsequent agreement between [the parties] regarding this loan transaction must also be a signed writing to be legally enforceable." Doc. Ent. 60-21. Under the rule set forth in *KSL Recreation Corp.*, the existence of this merger agreement makes it unreasonable for plaintiff to rely on any

7

representation not included in the mortgage. Accordingly, plaintiff cannot maintain a claim for fraud against the defendants because the valid merger clause renders reliance on representations that are not included in the agreement unreasonable.

If this Court does not agree with my Rule 12(b) and Rule 56(c) assessment above, plaintiff's claim should still be barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "stands for the simple . . . proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court; only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Planning Servs.,* 142 F.3d 326, 330 (6th Cir.1998).

This rule is bolstered by the negative inference drawn from 28 U.S.C. § 1257(a), which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476, (1983) (citing § 1257 in support of its decision to abstain). Therefore, when a district court is presented with claims that are "inextricably intertwined" with the judgment of a state court, the federal court "does not have jurisdiction over these elements of the . . . complaints." *Id.* at 486-87.

In *Feldman*, the two plaintiffs, who had been denied permission to sit for the bar examination by the highest court of the District of Columbia, sued that court in federal district court. The defendants challenged both the specific decisions denying them admission to the exam and the constitutionality of the underlying local statutes authorizing the denials. In affirming the dismissal of the former claims, the Supreme Court reasoned that the "allegations that the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying [plaintiffs'] petitions for waiver [of the bar examination requirements] . . . are inextricably intertwined with the

8

District of Columbia Court of Appeals' decisions." *Id.* at 486-87. The latter claims, however, challenging the bar examination rules themselves, were permitted to go forward, because the issue presented to the district court would not be the correctness of the District of Columbia Court of Appeals' decision, but would instead be the constitutionality of the rule that the District of Columbia court applied. *Id.* at 487.

In a later case, Justice Marshall succinctly restated the Rooker-Feldman doctrine when he reasoned as follows:

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco,* Inc. 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (dismissing a complaint that a judgment of the Supreme Court of Indiana violated several federal constitutional provisions, because "[t]o do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."). Courts applying the Rooker-Feldman doctrine have done so in two types of cases: (1) cases that constitute a direct attack on the substance of the state court opinion, and (2) cases that challenge the procedures by which a state court arrived at its decision. *See Catz v. Chalker*, 142 F.3d 279, 294-95 (6th Cir.1998).

Applying the Rooker-Feldman doctrine to plaintiff's case, this Court should dismiss the fraud claim. Plaintiff's claim that defendants misrepresented the amount plaintiff owed during the foreclosure is "inextricably intertwined" with the state court's judgment that the foreclosure was proper. Further, this claim is an attempt by plaintiff to directly attack the substance of the state

9

court opinion. As such, Count I of plaintiff's complaint is barred by the Rooker-Feldman doctrine.

### 2. Claim for Violation of the Equal Credit Opportunity Act

The Equal Credit Opportunity Act provides that:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
> (1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided that applicant has the capacity to contract);
> (2) because all or part of the applicant's income derives from any public assistance program; or
> (3) because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). "Plaintiff can establish a prima facie case of credit discrimination by showing: (1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from Defendants; (3) Plaintiff was qualified for the credit; and (4) despite Plaintiff's qualification, Defendants denied her credit application." *Charlotte Mays v. Buckeye Rural Electric Cooperative, Inc.*, 277 F.3d 873 (6th Cir. 2002).

Defendants contend that plaintiff's amended complaint should be dismissed because "[p]laintiff's pleading is deficient under Fed. R. Civ. P. 8." Doc. Ent. 60-1 at 8. Rule 8 provides that a party's claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Defendants' assertion is correct as plaintiff failed to plead the third and fourth elements of a credit discrimination claim. Plaintiff's failure to allege that he qualified for the credit and more importantly that defendants denied his credit application despite his qualifications should prompt this Court to dismiss his complaint. In fact, the record before this Court reveals that credit *was* extended to Plaintiff. Therefore, even if plaintiff properly alleges the elements of a credit discrimination claim, the facts in the record could not lead

rational trier of fact to find for plaintiff because plaintiff was not denied credit by defendants. Accordingly, this court should grant the defendants' summary judgment as to Count IV.

### 3. Claim for Unjust Enrichment

"The doctrine of unjust enrichment provides an equitable remedy imposed to prevent injustice." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (internal quotes omitted). A properly pleaded claim for unjust enrichment must include allegations that "(1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3) the defendant retained the benefit under circumstances where it would be unjust to do so without payment." Id. at 501 (internal quotes omitted).

As an initial matter, plaintiff's complaint for unjust enrichment should be dismissed for failure to state a claim. Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 127 S.Ct. at 1974. Plaintiff's amended complaint pleads the requisite elements of unjust enrichment in a conclusory fashion. That is, plaintiff does not allege what benefit was received by defendants. Further, the complaint does not meet the requirements of Rule 9(b). "It matters not whether a claim is grounded in fraud or some other legal theory. Rather, if an allegation in a pleading contains 'an averment of fraud,' whether as part of a fraud claim or an element of a non-fraud claim, the "averment of fraud" must be stated with the requisite particularity." *Brege v. Lakes Shipping Company, Inc.*, No. 04-10051-BC, slip op. at 5 (E.D. Mich. Dec. 29, 2004). Plaintiff's unjust enrichment claim is premised on the alleged misrepresentation by defendants. As stated in Section 1 of this report, plaintiff's

11

amended complaint does not meet the threshold of Rule 9(b) as it does not even allege a particular misrepresentation by defendants.

Additionally, defendants contend that the "parties' written contract precludes a claim for unjust enrichment."  Doc. Ent. 60-1 at 8.  In *King v. Ford Motor Credit Co.*, 257 Mich. App. 303, 327-38 (2003), the court held that a plaintiff's unjust enrichment claim failed because where a written agreement governs the parties transaction, a contract will not be implied under the doctrine of unjust enrichment.  In *Noel v. Fleet Finance, Inc.*, 971 F.Supp. 1102, 113-14 (E.D. Mich. 1991), the plaintiffs alleged a claim for unjust enrichment based on the defendant's receipt of certain premiums in loan transactions.  Because the plaintiffs entered into express loan contract, which contained the terms of the loan, the unjust enrichment claim could not be maintained.  *Id.*  "There cannot be an express and implied contract covering the same subject matter at the same time."  *Id.*  Again, in *King v. Ford Motor Credit Co.*, 257 Mich. App. 303, 327-38 (2003), the court held that a plaintiff's unjust enrichment claim failed because where a written agreement governs the parties transaction, a contract will not be implied under the doctrine of unjust enrichment.

In this case, plaintiff alleges that defendants were unjustly enriched because they received mortgage payments and plaintiff's property was subsequently foreclosed.  Plaintiff and defendants entered into an express mortgage loan contract, which specified the terms and payments to be made.  Because the transaction was governed by a written agreement, plaintiff cannot rely on a claim of unjust enrichment and defendants are entitled to summary judgment as a matter of law.

Further, this Court should find that plaintiff's unjust enrichment claim is barred by the Rooker-Feldman doctrine because the issue is "inextricably intertwined" with the judgment of a

state court. Plaintiff states "Defendant's, although have [sic] received his mortgage payments, have foreclosed his property" and received a benefit. Doc. Ent. 49 at 3 ¶ 32. Thus, plaintiff's unjust enrichment claim is predicated on the allegation that the state court foreclosure was improper. The state court's finding that the foreclosure was proper is inextricably intertwined with the unjust enrichment claim, and this Court should therefore grant summary judgment as to Count VI of plaintiff's complaint.

### 4. Claim for intentional infliction of emotional distress

Under Michigan law, to properly establish a prima facie case for intentional infliction of emotion distress, a plaintiff must allege: "1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress." *Pratt v. Brown Machine Co.*, 855 F.2d 1225,1239 (6th Cir. 1988) (quoting *Margita v. Diamond Mortgage Corp.,* 159 Mich. App. 181, 187-88 (Mich. Ct. App. 1987)). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* Plaintiff alleges that the defendants' behavior in "withholding information and providing false information is extreme and outrageous;" however the state court has already upheld the validity of the foreclosure. Doc. Ent. 49 at 3 ¶ 37. Moreover, plaintiff does not show how the action of foreclosing the mortgage on his home meets the elements of intentional infliction of emotional distress.

Additionally, in plaintiff's response he states "the defendant's breached the contract, and this cause [sic] intentional infliction of emotion distress." Doc. Ent. 77 at 8. Defendants contend that the mere failure to meet a contractual obligation, without more, does not amount to outrageous conduct for purposes of this claim. *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985); *Wedit v. Auto-Owners Ins. Co.,* 156 Mich. App 19, 25 (Mich. App. 1986). Plaintiff does

13

not allege any negligent, willful or intentional conduct on behalf of defendants to satisfy the pleading threshold of this tort.  Therefore, defendants are entitled to summary judgment.

**5.  Claim for violation of the Truth-In-Lending Act.**

The Truth-In-Lending Act was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him" 15 U.S.C § 1601(a).  It further states that "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  Plaintiff alleges that defendants "failed to give any TILA disclosures, failed to disclose whom the servicer was going to be, failed to give a good faith estimate and failed to provide a HUD-1."  Doc. Ent. 49 at 3 ¶ 14.

The record clearly shows that plaintiff's assertions are incorrect.  The record indicates that on April 11, 2005, defendants mailed plaintiff its own Good Faith Estimate and Truth-In-Lending disclosures.  Doc. Ent. 60-8.  Further on April 28, 2005, plaintiff signed the Truth-in-Lending Disclosure Statement.  Doc. Ent. 60-11.  On this same date, plaintiff also signed the RESPA Servicing Disclosure indentifying AMC as the servicer of the loan (Doc. Ent. 60-14) and a Joint Notification Letter Notice of Assignment, Sale or Transfer of Servicing Rights, which also advised of the servicing transfer from Argent to AMC (Doc. Ent. 60-20).  During this transaction, plaintiff also signed the HUD-1 dated April 28, 2005.  Doc. Ent.  60-13.  Plaintiff simply does not have a colorable claim against defendants for any violation of the Truth-In-Lending Act as he timely received the disclosure documents.

Further, the one-year statute of limitation found in the statute bars plaintiff's claim.  Plaintiff closed his loan on April 28, 2005 and filed suit on March 23, 2007, nearly two years later.

14

Plaintiff's claim was filed after the statute's one-year statute of limitations had run and therefore this court should grant defendants' motion for summary judgment as to Count II.

### 6. Violation for the Michigan Consumer Protection Act

Count V of plaintiff's amended complaint alleges violations of the Michigan Consumer Protection Act. This court should grant defendants motion for summary judgment because the Michigan Consumer Protection Act does not apply to residential mortgage transactions. In *Newton v. West*, 262 Mich. App. 434, 439 (Mich. App. 2004), the court held that residential mortgage loan transactions are exempt from the Act. Accordingly, plaintiff's claims under the Michigan Consumer Protection Act should fail "as a matter of law because the residential mortgage loan transactions are exempt." *Id.* at 442; *see* also *Cowles v. Bank West*, 263 Mich. App. 213, 219 (Mich. App. 2004) (relying on *Newton* and holding that residential mortgage loan transactions at issue were not covered by the Act).

## III.  NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<div style="margin-left:40%">
s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE
</div>

Dated: 1/25/10

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record  by electronic means or U.S. Mail on January 25, 2010.
>
> s/Eddrey Butts<br>
> Case Manager