UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARZEL L. FOSTER, III,

        Plaintiff,

                          CASE NO. 07-CV-11250
                          JUDGE PAUL D. BORMAN
                          MAGISTRATE JUDGE PAUL J. KOMIVES

v.

ARGENT MORTGAGE COMPANY, L.L.S.;
AMC MORTGAGE COMPANY;
AMERIQUEST MORTGAGE;
COUNTRY WIDE HOME LOANS, INC.;
BANK OF AMERICA, N.A.;
FIRST CHOICE FINANCIAL;
WELLS FARGO BANK, N.A.;
TROTT & TROTT, P.C. and
MERS;

        Defendants.

_____/

**REPORT AND RECOMMENDATION REGARDING
DEFENDANTS' JULY 2, 2009 MOTION TO DISMISS (Doc. Ent. 69)**

**Table of Contents**

I. Recommendation ...................................................................................................2
II. Report .................................................................................................................2
    A. Statement of Facts..........................................................................................2
    B. Amended Complaint ........................................................................................3
    C. Countrywide and Wells Fargo's July 2, 2009 Motion to Dismiss .................4
    D. Standard: Fed. R. Civ. P. 12(b)......................................................................5
    E. This Court Should Deny in Part and Grant in Part Defendants' Motion to Dismiss.6
        1. Fraud Claim ..............................................................................................6
        2. Claim for Violation of Fair Debt Collection Practices Act ......................9
        3. Claim for Violation of Equal Credit Opportunity Act ...........................11
        4. Claim for Unjust Enrichment .................................................................13
        5. Claim for Violation of MICH. COMP. LAWS § 600.3204....................14
        6. Claim for Intentional Infliction of Emotional Distress....................15
III. Notice to Parties Regarding Objections ...........................................................16

I.    **RECOMMENDATION:** This Court should grant in part and deny in part defendants'

motion to dismiss.  Defendants' motion to dismiss Counts I, IV, VI, VII, and VIII should be

granted for failure to state a claim upon which relief can be granted.  Defendants' motion to

dismiss Count III should be denied because plaintiff has satisfied his pleading requirements

under the Federal Rules of Civil Procedure.

II.    **REPORT:**

A.    **Statement of Facts**

In April 2005, plaintiff retained a mortgage brokerage firm, First Choice Financial, to

assist him in securing a residential mortgage loan for a property located on 191165 Midway,

Southfield, Michigan 48076.  Doc. Ent. 60-3.  In an effort to secure the residential mortgage

loan, plaintiff authorized the broker to release information contained in his loan application or

other documents required in connection with the loan.  Doc. Ent. 60-5.

On or about April 11, 2005, plaintiff's broker submitted a loan request on his behalf to

Argent.  Doc. Ent. 60-7.  Subsequently, Argent mailed plaintiff several documents showing the

estimated cost of credit for the property and enclosed several significant documents and

disclosures.  Doc. Ent. 60-8.  On April 28, 2005, plaintiff entered into a mortgage with Argent.

Doc. Ent. 60-9.  The mortgage set forth the loan amount and plaintiff executed an 'Adjustable

Rate Rider.'  Doc. Ent. 60-9.  During this transaction, plaintiff also signed a 'Truth-in-Lending

Disclosure Statement.'  Doc. Ent. 60-11.  This Statement provided plaintiff with notice that the

loan has a variable rate feature and a variable rate feature.  Doc. Ent. 60-11.  On April 28, 2005,

plaintiff also signed the RESPA Servicing Disclosure indentifying AMC as the servicer of the

loan (Doc. Ent. 60-14) and a Joint Notification Letter Notice of Assignment, Sale or Transfer of

Servicing Rights, which again advised of the serving transfer from Argent to AMC (Doc. Ent. 60-20).

On April 30, 2005, the mortgage was duly assigned to Wells Fargo Bank, resulting in Countrywide Home Loans assuming responsibilities as servicer. Doc. Ent. 69-6.  On August 22, 2006, Wells Fargo foreclosed the mortgage on the property and purchased the property at the foreclosure sale.  Doc. Ent. 69-7.  The redemption period came and went and as plaintiff failed to redeem the property, title vested in Wells Fargo.  On or before March 26, 2007, Wells Fargo filed suit against plaintiff to obtain possession of the property.  Doc. Ent. 69-8.  The District Court entered a favorable judgment for Wells Fargo, which entitled it to possession of the property.  Doc. 69-9.

**B.     Amended Complaint**

On January 15, 2009, Foster filed an amended complaint in this Court alleging an illegal foreclosure on property located at 19165 Midway Road, Southfield, Michigan 48075.  Doc. Ent. 49.

The caption of the complaint lists the defendants as Argent Mortgage Company, LLC; AMC Mortgage Company; Ameriquest Mortgage; Countrywide Home Loans, Inc.; Bank of America; First Choice Financial; Wells Fargo Bank; Trott & Trott and MERS.  Doc. Ent. 49 at 1. However, on June 24, 2009, Judge Borman dismissed the complaints against defendants First Choice Financial Group Inc., Trott & Trott, MERS, and Bank of America for failure to effect proper service.  Doc. Ent. 66.  On May 7, 2009, defendants Argent Mortgage, AMC Mortgage, and Ameriquest filed a motion for summary judgment.  Doc. Ent. 60.  The motion for summary judgment was referred to me for entry of a report and recommendation. Doc. Ent. 61.  On May 8,

3

2009, the remaining defendants Countrywide and Wells Fargo filed a motion to dismiss which is the subject of this Report and Recommendation. Doc. Ent. 69.

Plaintiff's complaint contains eight (8) counts of which only six (6) indentify defendants Wells Fargo and Countrywide.[1] Doc. Ent. 49 at 1,3,4,5.   On February 16, 2009, defendants Countrywide and Wells Fargo filed an answer to the amended complaint.  Doc. Ent. 54.

**C.   Countrywide and Wells Fargo's July 2, 2009 Motion to Dismiss.**

On June 2, 2009, defendants Countrywide and Wells Fargo filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Doc. Ent. 69.  Defendants seek dismissal of plaintiff's claims and argue that (A) "[p]laintiff . . . failed to state any claims on which relief can be granted(;)" (B) "[p]laintiff's claim for fraud is barred by the Rooker-Feldman doctrine . . . and [p]laintiff . . . failed to state a claim for fraud on which relief can be granted[;]" (C) "[p]laintiff's claim against Wells Fargo and Countrywide for violation of the 'FDCRA Act' must be dismissed [because] 1. [t]here is no 'FDCRA Act'. . .[and] 2. Assuming that [p]laintiff meant to claim a violation of the Fair Debt Collection Practices Act ('FDCPA'), the claim must be dismissed for failure to state a claim[;]" (D) "[p]laintiff's claim for violation of the Equal Credit Opportunity Act must be dismissed [because plaintiff]. . .failed to allege that he applied for credit with Countrywide or Wells Fargo[;]" (E) "[p]laintiff's claim for unjust enrichment . . . is barred by the Rooker-Feldman Doctrine [and plaintiff] fail[ed] to state a claim[;]" and (F) "there is no private right of action under MCL 600.3204." Doc. Ent. 69 at 2-16.

---

[1] Counts I, III, IV, VI, VII, and VII identify Countrywide and Wells Fargo as defendants.  Count I alleges fraud against Countrywide, Bank of America, Wells Fargo, Trott & Trott, First Choice Financial Group, Argent, Ameriquest, and AMC. Doc. Ent. 49 at 1.  Count III alleges a violation of the "FDCRA Act" by Wells Fargo, Countrywide, Bank of America and Trott & Trott.  Doc. Ent. 49 at 3.  Count IV alleges a violation of the Equal Credit Opportunity Act by all defendants including Countrywide and Wells Fargo. Doc. Ent. 49 at 3-4.  Count VI alleges all defendants including Countrywide and Wells Fargo were unjustly enriched. Doc. Ent. 49 at 4-5. Count VII alleges Countrywide, Wells Fargo and Trott & Trott violated MCL 600.3204. Doc. Ent. 49 at 5. Count VII alleges the conduct of all defendants including Countrywide and Wells Fargo caused plaintiff emotional distress. Doc. Ent. 49 at 5.

On July 7, 2009, Judge Borman referred this motion to me for entry of a report and recommendation. Doc. Ent. 70.  On August 6, 2009, I entered a notice of hearing for the motion to dismiss. Doc. Ent. 74.  On September 9, 2009, plaintiff filed "Supplemental Answers" as a response to the motion to dismiss.[2]  Doc. Ent. 77.   Subsequently, on September 10, 2009, I entered a notice of cancellation of the motion hearing and affirmed that "[t]he motion will be decided upon the papers without being scheduled for oral argument." Doc. Ent. 78.

**D.      Standard: Fed. R. Civ. P. 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff must allege "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (citations and quotations omitted).  While courts do not require "heightened fact pleading of specifics," *id.*, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.* at 1965.  Plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id.*

The reviewing court must construe the complaint in the light most favorable to plaintiff and must presume all factual allegations in the complaint as true. *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  The purpose of Rule 12(b)(6) is to give defendants the opportunity to test whether  plaintiff is entitled to legal relief as a matter of law even if everything alleged in the complaint is true. *See Mayer v. Mylod*, 988 F.2d. 635, 638 (6th Cir. 1993).  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of

---

[2] This Court has construed plaintiff's "Supplemental Answers to Motion for Dismiss" as his response to defendants' motion.  Doc. Ent. 77.  Despite the caption used in this filing, the structure and content of the document makes evident that plaintiff is responding to defendants' motion.

2:07-cv-11250-PDB-PJK    Doc # 84    Filed 01/25/10    Pg 6 of 17    Pg ID 907

pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957). Courts generally disfavor a dismissal under Rule 12(b)(6), as it is a dismissal on the merits. See 2A JAMES W. MOORE'S FEDERAL PRACTICE ¶ 12.07 (2d. ed. 1995).

**E.    This Court Should Grant in Part and Deny in Part the Defendants' Motion to Dismiss**

**1.   Fraud Claim**

Pursuant to Fed. R. of Civ. P. 9(b), fraud must be pled with specificity and general allegations are not sufficient to state a claim of fraud. *See* Fed. R. of Civ. P. 9(b); *Van Marter v. American Fidelity Fire Ins. Co.*, 318 N.W.2d 679, 685 (Mich. Ct. App. 1982). This requires that plaintiff allege, at minimum, "the time, place, and contents" of the misrepresentation. *See American Town Center v. Hall 83 Assocs.*, 912 F.2d 104, 110-11 (6th Cir. 1990). To show an actionable fraud claim, plaintiff must show: "(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Martell v. Turcheck*, No. 07-CV-14068, 2008 WL 2714210, at * 4, (E.D. Mich. July, 7, 2008) citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976).

Count I of plaintiff's amended complaint alleges that defendants "made false *material misrepresentations* when they sought $365,329.44 from Plaintiff and further, when it indicated that the redemption amount was $377,940.58." Doc. Ent. 49 at 2 ¶ 8 (emphasis added). The complaint further alleges that defendants "knew the representations were false when they made them, with the intent that Plaintiff would act on it." Doc Ent. 49 at 2 ¶ 9. Plaintiff alleges that "[d]ue to these false misrepresentations" he has been damaged. Doc Ent. 49 at 2 ¶ 10.

6

Applying the principles set forth above, this Court should dismiss plaintiff's fraud claim for several reasons. With regard to the first element, plaintiff does not allege sufficient facts that support the allegation that defendants made misrepresentations to him when defendants sought $365,329.44 from plaintiff or when defendants' indicated that the redemption amount was $377,940.58. The allegation merely states the defendants' redemption amount and the amount defendants sought to recover from plaintiff.     The allegation does not indicate what the misrepresentation was nor does it allege the "time, place and contents of the misrepresentation." *American Town Center*, 912 F.2d at 110-11.

With regard to the second element, plaintiff also does not allege sufficient facts that support the allegation that defendants made *false* misrepresentations. The complaint generally alleges that the material misrepresentations were false. As stated above, general allegations are insufficient to establish a fraud claim. Lastly, the complaint does not allege facts to show that plaintiff relied on the false misrepresentations. While the complaint alleges that due to the misrepresentations plaintiff suffered damages and that defendants made the misrepresentations with the intent for plaintiff to act on them, the complaint does not allege that plaintiff indeed relied on the misrepresentations.

In sum, plaintiff's claims are conclusory. Plaintiff does not state a claim for fraud because he does not allege the time, place and contents of the misrepresentation and does not allege he relied on the defendants' alleged misrepresentations.

Additionally, the defendants contend plaintiff's claim for fraud is barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine "stands for the simple . . . proposition that lower federal courts do not have jurisdiction to review a case litigated and decided in state court;

only the United States Supreme Court has jurisdiction to correct state court judgments." *Gottfried v. Med. Planning Servs.,* 142 F.3d 326, 330 (6th Cir.1998).

This rule is bolstered by the negative inference drawn from 28 U.S.C. § 1257(a), which states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari."  *See District of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476, (1983) (citing § 1257 in support of its decision to abstain). Therefore, when a district court is presented with claims that are "inextricably intertwined" with the judgment of a state court, the federal court "does not have jurisdiction over these elements of the . . . complaints." *Id.* at 486-87.

In *Feldman*, the two plaintiffs, who had been denied permission to sit for the bar examination by the highest court of the District of Columbia, sued that court in federal district court.  The defendants challenged both the specific decisions denying them admission to the exam and the constitutionality of the underlying local statutes authorizing the denials.   In affirming the dismissal of the former claims, the Supreme Court reasoned that the "allegations that the District of Columbia Court of Appeals acted arbitrarily and capriciously in denying [plaintiffs'] petitions for waiver [of the bar examination requirements] . . . are inextricably intertwined with the District of Columbia Court of Appeals' decisions." *Id.* at 486-87. The latter claims, however, challenging the bar examination rules themselves, were permitted to go forward, because the issue presented to the district court would not be the correctness of the District of Columbia Court of Appeals' decision, but would instead be the constitutionality of the rule that the District of Columbia court applied. *Id.* at 487.

In a later case, Justice Marshall succinctly restated the Rooker-Feldman doctrine when he reasoned as follows:

> While the question whether a federal constitutional challenge is inextricably intertwined with the merits of a state-court judgment may sometimes be difficult to answer, it is apparent, as a first step, that the federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment.

*Pennzoil Co. v. Texaco,* Inc. 481 U.S. 1, 25 (1987) (Marshall, J., concurring); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (dismissing a complaint that a judgment of the Supreme Court of Indiana violated several federal constitutional provisions, because "[t]o do so would be an exercise of appellate jurisdiction. The jurisdiction possessed by the District Courts is strictly original."). Courts applying the Rooker-Feldman doctrine have done so in two types of cases: (1) cases that constitute a direct attack on the substance of the state court opinion, and (2) cases that challenge the procedures by which a state court arrived at its decision. *See Catz v. Chalker*, 142 F.3d 279, 294-95 (6th Cir.1998).

Applying the Rooker-Feldman doctrine to plaintiff's case, this Court should dismiss the fraud claim. Plaintiff's claim that defendants misrepresented the amount plaintiff owed during the foreclosure is "inextricably intertwined" with the state court's judgment that the foreclosure was proper. Further, this claim is an attempt by plaintiff to directly attack the substance of the state court opinion. As such, Count I of plaintiff's complaint is both barred by the Rooker-Feldman doctrine and should also be dismissed for failure to state a claim upon which relief can be granted.

### 2. Claim for Violation of the Fair Debt Collection Practices Act[3].

---

[3] While plaintiff's complaint in Count III alleges the defendants violated "the FDCRA Act," clearly plaintiff intended to allege a violation of the Fair Debt Collection Practices Act. This is evident as plaintiff cites 15 U.S.C §§ 1692(e), 1692(f), the correct sources for the Fair Debt Collection Practices Act. Doc. Ent. 49 at 3.

The FDCPA specifically states that its purpose is "to eliminate abusive debt collection practices by debt collectors" and "to protect against debt collection abuses." 15 U.S.C. § 1693(e). "In order to prevail on an FDCPA claim, a plaintiff must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA'." *Kaplan v. Assetcare*, Inc., 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000) (quoting *Sibley v. Firstcollect*, Inc. 913 F. Supp. 469, 470 (M.D. La. 1995)). The FDCPA defines the term "debt collector" as:

> any person who uses any instrumentality or interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owned or due or asserted to be owed or due another . . . the term include any creditor who, in the process of collecting his own debts, uses any name other than his won which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6).

In Count III of the complaint, plaintiff alleges defendant Countrywide and Wells Fargo violated the FDCPA. This Court should find that plaintiff has stated a claim upon which relief can be granted.

Contrary to defendants' assertion that plaintiff does not make clear the allegedly violative debt collection practice or conduct that formed the basis of the complaint, the complaint does state conduct that violates the statute. In paragraph 20, the complaint alleges "[defendants] threatened foreclosure on Plaintiff's home when that action was illegally based upon an untrue balance, making the threat a violation of 15 USC 1962e." Doc Ent. 49 at 3 ¶ 18. In paragraphs 21 and 22, the complaint alleges additional conduct by defendants that is violative of the statute "including the failure to communicate that a disputed debt is disputed." Doc Ent. 49 at 3 ¶ 20, 21.

10

Defendants also contend that plaintiff has not satisfied the second prong of the test because plaintiff "has not alleged that either Wells Fargo or Countrywide is a debt collector" as defined by the statute. Doc. Ent. 69 at 7. In light of the Supreme Court decision in *Haines v. Kerner*, 404 U.S. 519 (1972), the Court should conclude that plaintiff does allege defendants are debt collectors given the language used in this complaint.[4] Specifically, plaintiff asserts that the statements made by defendants were made in an effort to collect a debt. Doc Ent. 3 at 3 ¶ 18. Despite defendants' contention asking for a strict construction of the pleading and the elements of this claim, given the rule set forth in *Kerner*, that pro se complaints are to be liberally construed, this Court should find that plaintiff has satisfied his pleading requirements under the Federal Rules of Civil Procedure.

**3.  Claim for Violation of the Equal Credit Opportunity Act**

In Count IV, plaintiff alleges that all defendants violated the Equal Credit Opportunity Act by discriminating against plaintiff on the basis of race. Doc. Ent. 49 at 4 ¶ 24. Specifically, plaintiff alleges there is "ample anecdotal and statistical evidence demonstrating a pattern of abuses on the basis of race." Doc. Ent. 49 at ¶ 25.

The Equal Credit Opportunity Act provides that:

It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
(1)  on the basis of race, color, religion, national origin, sex or marital status, or age (provided that applicant has the capacity to contract);
(2)  because all or part of the applicant's income derives from any public assistance program; or
(3)  because the applicant has in good faith exercised any right under this chapter.

15 U.S.C. § 1691(a). "Plaintiff can establish a prima facie case of credit discrimination by showing: (1) Plaintiff was a member of a protected class; (2) Plaintiff applied for credit from

---

[4] In *Haines v. Kerner*, the Supreme Court held that pro se complaints are to be liberally construed. The Court stated that such a complaint can only be dismissed for failure to state a claim if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

Defendants; (3) Plaintiff was qualified for the credit; and (4) despite Plaintiff's qualification, Defendants denied her credit application." *Charlotte Mays v. Buckeye Rural Electric Cooperative, Inc.*, 277 F.3d 873 (6th Cir. 2002).

This count of plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted because plaintiff's conclusory allegations are insufficient. That is, plaintiff provides no factual basis for his allegations that defendants engaged in discrimination. While plaintiff asserts there is ample "anecdotal" and "statistical" evidence in support of his claim, plaintiff provides no specific incident of discrimination by defendants.

Further, defendants contend that plaintiff's complaint should be dismissed because plaintiff fails to meet the elements of a prima facie case. Doc. Ent. 69 at 8. Specifically, defendants argue that "Plaintiff failed to allege that he applied for credit with Countrywide or Wells Fargo." Doc. Ent. 69 at 8. Defendants also assert that because plaintiff did not apply for credit with defendants, he is not an applicant under the statute. However, the ECOA defines a "creditor" as anyone who "regularly extends, renews or continues credit; any person who regularly arranges for the extension, renewal or continuation of credit; or any *assignee* of an original creditor who participates in the decision to extend, renew or continue credit." 15 U.S.C. §1691a(e) (emphasis added). The amended complaint states that plaintiff applied for a mortgage from Argent, and later Argent assigned the mortgage to defendants. Doc. Ent. 49 at 2 ¶ 5, 6. As such, plaintiff did allege he applied for credit from defendants and satisfies the second element.

However, plaintiff's ECOA complaint falls short with respect to the third and forth elements of the claim of discrimination. Plaintiff's failure to allege that he qualified for the credit and more importantly that defendants denied his credit application despite his qualifications requires this Court to dismiss his complaint. In fact, the record before this Court

12

reveals that credit was extended to Plaintiff.  Accordingly, this court should grant the defendants'
motion to dismiss as to Count IV.

### 4.  Claim for Unjust Enrichment

"The doctrine of unjust enrichment provides an equitable remedy imposed to prevent
injustice." *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) (internal quotes
omitted).  A properly pleaded claim for unjust enrichment must include allegations that "(1) the
plaintiff conferred a benefit upon the defendant; (2) the defendant knew of such benefit; and (3)
the defendant retained the benefit under circumstances where it would be unjust to do so without
payment." Id. at 501 (internal quotes omitted).

Plaintiff's claim for unjust enrichment should be dismissed for several reasons. First, the
amended complaint pleads the requisite elements of unjust enrichment in a conclusory fashion.
That is, plaintiff does not allege what benefit was received by defendants.  Second, the complaint
does not meet the requirements of Rule 9(b). "It matters not whether a claim is grounded in fraud
or some other legal theory.  Rather, if an allegation in a pleading contains 'an averment of fraud,'
whether as part of a fraud claim or an element of a non-fraud claim, the "averment of fraud"
must be stated with the requisite particularity." *Brege v. Lakes Shipping Company, Inc.*, No. 04-
10051-BC, slip op. at 5 (E.D. Mich. Dec. 29, 2004). Plaintiff's unjust enrichment claim is
premised on the alleged misrepresentation by defendants.  As stated in Section 1 of this report,
plaintiff's amended complaint does not meet the threshold test of Rule 9(b) as it contains no
allegation of the time, place, and content of the defendants' alleged misrepresentation.

Additionally, defendants contend that plaintiff's claim of unjust enrichment is barred by
the Rooker-Feldman Doctrine.  Defendants' assertion is correct because the issue of unjust
enrichment is "inextricably intertwined" with the judgment of a state court.  Plaintiff states

13

"Defendant's, although have [sic] received his mortgage payments, have foreclosed his property" and received a benefit. Doc. Ent. 49 at 3 ¶ 32.  Thus, plaintiff's unjust enrichment claim is predicated on the allegation that the state court foreclosure was improper.  The state court's finding that the foreclosure was proper is inextricably intertwined with the unjust enrichment claim, and this Court should dismiss Count VI of plaintiff's complaint.

### 5.   Claim for Violation of MICH.  COMP. LAWS 600.3204.

In Count VII, plaintiff alleges that defendants violated MICH.  COMP. LAWS § 600.3204. In Michigan, there are two methods for foreclosing a mortgage: foreclosure by judicial action and foreclosure by advertisement.  Section 600.3204 deals with foreclosure by advertisement. Foreclosure by advertisement is only available if the following conditions are met as set forth in Section 600.3204:

> [A] party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.
>
> (c) The mortgage containing the power of sale has been properly recorded.
>
> (d) The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

MICH.  COMP. LAWS §600.3204.  Also, if the party foreclosing the mortgage by advertisement is not the original lender, a record chain of title must exist prior to the date of the foreclosure sale evidencing the assignment of the mortgage to the foreclosing party. MCL § 600.3204(3).  This

14

Court should dismiss this claim because plaintiff does not allege that defendants failed to meet the requirements of the statute. Additionally, as correctly asserted by defendants section 600.3204 does not have a private right of action.

### 6. Claim for intentional infliction of emotional distress

Under Michigan law, to properly plead a claim for intentional infliction of emotional distress, a plaintiff must allege: "1) extreme and outrageous conduct; 2) intent or recklessness; 3) causation; and 4) severe emotional distress." *Pratt v. Brown Machine Co.*, 855 F.2d 1225,1239 (6th Cir. 1988) (quoting *Margita v. Diamond Mortgage Corp.,* 159 Mich. App. 181, 187-88 (Mich. Ct. App. 1987)). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* "The test to determine whether a person's conduct was [sufficiently] extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Lewis v. LeGrow*, 258 Mich. App. 175, 196 (Mich. App. 2003). Further, "it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff' to punitive damages for another tort." *Roberts v. Auto-Owners Insurance Company*, 422 Mich. 594, 603 (1985).

Plaintiff alleges that the defendants' behavior in "withholding information and providing false information is extreme and outrageous;" however, cases applying these elements demonstrate that plaintiff has failed to state a claim. See, e.g. *Holloway v. Doug Fisher, Inc.*, 865 F.Supp. 412, 423 (E.D. Mich. 1994) (contrasting a breach of contract with sending a dead mouse to someone through the mail in reviewing the extreme and outrageous standard); *Mills v.*

*Equipcredit Corp.*, 344 F.Supp. 2d 1071, 1080 (E.D. Mich. 2004) (mortgage lender's conduct does not rise to level of extreme and outrageous behavior).

Further, under Michigan law, it is axiomatic that an action in tort for emotional distress may not be maintained for failure to perform in accordance with a contract. *Neibarger v. Universal Coops, Inc.*, 439 Mich. 512, 527-28 (1992). In *Neibarger* the Michigan Supreme Court expressly adopted the economic loss doctrine, which provides that remedies arising out of contractual relationships are found solely in contract law, for aggrieved parties in contract cases suffer only economic losses. *Id.* at 520. Underpinning, the *Neibarger* court's rationale was *Hart v. Ludwig*, 347 Mich. 559, 563 (1956), where the court found that there must be a tort duty separate and distinct from the contract before an action in tort may be alleged.

In the context of a claim for intentional infliction of emotional distress, the Michigan Court of Appeals has applied the economic loss doctrine and ruled that in a contractual setting, an action in tort for intentional infliction of emotional distress must rest on breach of a duty distinct from the contract. *Robert v. Auto-Owners, Ins. Co.*, 422 Mich. App. 594, 604 (1985). The allegations of plaintiff's amended complaint reveal that the claim is intrinsically based upon the alleged violation of contractual duties, the loan transaction and the foreclosure. The allegations would not have arisen independent of the contract's existence, and therefore Count VIII should be dismissed.

## III. NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 147-

48 (1985), *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Filing of objections that raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. E.D. Mich. LR 72.1(d)(3). The response shall not be more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/25/10

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on January 25, 2010.

s/Eddrey Butts
Case Manager

17